## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                 :    Master Docket No.

IN RE PLASTICS ADDITIVES       :    03-CV-2038

ANTITRUST LITIGATION          :    and MDL Docket No. 1684
_____:
                                   :

THIS DOCUMENT RELATES TO:    :
                                   :

Gitto/Global Corp. v. Rohm & Haas Co.,  :

*et al.*                                :

No. 07-CV-2038                  :

(Direct Purchaser Class Action)     :
_____:

## <u>O R D E R</u>

AND NOW, this _____ day of _____, 2009, upon consideration of Direct

Purchaser Plaintiffs' Motion To Compel Defendant Arkema, Inc. To Produce Certain

Transaction Data, IT IS ORDERED that the Motion is GRANTED. Pursuant to Fed. R. Civ. P.

37, the Court compels defendant Arkema, Inc. to produce transaction data for May through

December 2006 for its sale of organotin heat stabilizers and epoxidized soybean oil.

BY THE COURT:


_____

LEGROME D. DAVIS, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | Master Docket No. 03-CV-2038 |
| IN RE PLASTICS ADDITIVES | : | |
| ANTITRUST LITIGATION | : | and MDL Docket No. 1684 |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| Gitto/Global Corp. v. Rohm & Haas Co., | : | |
| *et al.* | : | |
| No. 07-CV-2038 | : | |
| (Direct Purchaser Class Action) | : | |
| | : | |

## DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL
## DEFENDANT ARKEMA, INC. TO PRODUCE CERTAIN TRANSACTION DATA

In accordance with footnote 3 of the Amended Case Management Order, filed August 21, 2009 (Dkt. No. 455), the Direct Purchaser Plaintiffs respectfully move under Rule 37(a)(3)(B)(iv), Fed. R. Civ. P., for an Order compelling Defendant Arkema, Inc. to produce transaction data for May through December 2006 for its sales of organotin heat stabilizers and epoxidized soybean oil.  In support of this Motion, Plaintiffs rely upon the accompanying Memorandum of Law and the exhibits attached thereto.

Pursuant to Local Rule of Civil Procedure 26.1(f), we hereby certify that the parties, after reasonable effort, are unable to resolve this dispute.

Dated: September 3, 2009

Solomon B. Cera
C. Andrew Dirksen
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230

By: */s/ Craig W. Hillwig*
Joseph C. Kohn
William E. Hoese
Craig W. Hillwig
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Tel: (215) 238-1700

Robert N. Kaplan
Gregory K. Arenson
Jason A. Zweig
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980

J. Douglas Richards
Kathleen M. Konopka
COHEN, MILSTEIN, SELLERS
 & TOLL P.L.L.C.
150 East 52nd Street, 30th Floor
New York, NY 10022-6017
Tel: (212) 838-7797

Attorneys for the Direct Purchaser Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | Master Docket No. |
| IN RE PLASTICS ADDITIVES | : | 03-CV-2038 |
| ANTITRUST LITIGATION | : | and MDL Docket No. 1684 |
| _____ | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| Gitto/Global Corp. v. Rohm & Haas Co., | : | |
| *et al.* | : | |
| No. 07-CV-2038 | : | |
| (Direct Purchaser Class Action) | : | |
| _____ | : | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO COMPEL DEFENDANT ARKEMA, INC.
<u>TO PRODUCE CERTAIN TRANSACTION DATA</u>**

In accordance with footnote 3 of the Amended Case Management Order, dated August 21, 2009 (Dkt. No. 455), direct purchaser plaintiffs seek an order under Federal Rule of Civil Procedure 37(a)(3)(B)(iv) compelling defendant Arkema, Inc. ("Arkema") to produce transaction data for its sales of organotin heat stabilizers and ESBO (epoxidized soybean oil) for May through December 2006, as other defendants have done.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs initially requested each defendant to produce transaction data from January 1, 1990, through December 8, 2004, for each segment of plastics additives that was the subject of this case.  Arkema initially produced transaction data for the five segments of products that it sold: from January 3, 1994, through November 11, 2003, for organotins; from June 21, 1998, through November 7, 2003, for  ESBO; from January 3, 1994, through November 10, 2003, for acrylic impact modifiers; from January 4, 1994, through November 6, 2003, for methacrylate

butadiene styrene impact modifiers ("MBS"); and from January 5, 1994, through November 10, 2003, for acrylic processing aids.

On February 26, 2007, direct purchaser plaintiffs through the attorneys for PolyOne Corp. requested that Arkema update its transaction data through December 31, 2006. *See* the letter from Walter W. Noss to Howard D. Scher and Francis X. Taney, dated February 26, 2007 (attached Exhibit A). On April 10, 2007, Arkema supplemented its production of transaction data, but only from November 2003 through April 2006. *See* the letter from Francis X. Taney to C. Andrew Dirksen, Guido Saveri, Walter W. Noss and Krishna B. Narine, dated April 10, 2007 (attached Exhibit B). At that time, Arkema could clearly have supplemented its transaction data through December 2006, as requested, rather than merely through April 2006, but Arkema chose not to do so.

When Arkema failed to produce transaction data for May through December 2006, counsel for direct purchaser plaintiffs pressed Arkema to produce that data. On June 4, 2007, Arkema refused in writing. *See* the letter from Steven E. Bizar to C. Andrew Dirksen and William E. Hoese, dated June 4, 2007 (attached Exhibit C). Plaintiffs responded in writing on June 8, 2007, but Arkema still refused on June 18, 2007. *See* the letter from C. Andrew Dirksen to Steven E. Bizar, dated June 8, 2007 (attached Exhibit D) and the letter from Steven E. Bizar to C. Andrew Dirksen, dated June 18, 2007 (attached Exhibit E).

In response to similar requests to supplement their transaction data, former defendant Crompton Corporation (now known as Chemtura Corporation) ("Crompton") produced transaction data for organotins, ESBO and other products through December 2006; defendant The Dow Chemical Company ("Dow") and its wholly-owned subsidiary defendant Union Carbide Corporation ("UCC") produced transaction data for ESBO through December 2006

(they do not sell organotins or other products in this case); then-defendant Ferro Corporation

("Ferro") produced transaction data through December 2006 for organotins and ESBO (and

mixed metal heat stabilizers); and defendant Rohm and Haas Company  ("Rohm & Haas")

produced transaction data through December 2006 for organotins and other products (but not

ESBO, which it does not sell).  Only Akzo Nobel, Inc. ("Akzo") and Baerlocher USA, L.L.C.

("Baerlocher") of the original defendants that sold organotins did not supplement their initial

transaction data production, because their settlement agreements did not require them to do so.[1]

## II.    ARGUMENT

Under the Federal Rules of Civil Procedure, a party is entitled to "discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense," including that which

"appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P.

26(b)(1).  "The purpose of modern discovery rules is to allow the parties to obtain the fullest

possible knowledge of the issues and facts before trial."  *Crossley v. Iroquois Foundry Co.*, Civ.

A. No. 91-1657, 1992 WL 114956, at *1 (E.D. Pa. May 18, 1992); *see Al Barnett & Son, Inc. v.*

*Outboard Marine Corp.*, 611 F.2d 32, 36 (3d Cir. 1979) ("the fundamental purpose underlying

the discovery rules [is] to provide adequate information to litigants in civil trials").  The

principles of broad and liberal discovery are particularly important in price-fixing cases like this

one.  *See B-S Steel of Kan., Inc. v. Tex Indus. Inc.*, No. 01-CV-2410, 2003 WL 21639019, at *3

(D. Kan. July 22, 2003) ("[t]he general policy of allowing liberal discovery in antitrust cases has

been permitted by courts when there are allegations of conspiracy and where broad discovery

---

[1] Akzo initially produced transaction data for organotins from January 5, 1995, through December 31, 2003, and Baerlocher initially produced transaction data for organotins from January 10, 2000, through July 30, 2004.  Akzo also produced data for its ESBO sales from January 3 through December 19, 2001.

may be needed to uncover evidence of insidious design, pattern, or intent") (internal quotations omitted).

Arkema, as the objecting party, bears the burden of showing why discovery should not be allowed. *See Nike, Inc. v. Brandmania.com, Inc.*, No. Civ. A. 00-5148, 2002 WL 32348549, at *5 (E.D. Pa. Oct. 7, 2002) ("[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed"); *Gow v. Chrysler Corp.*, Civ. A. No. 86-3040, 1987 WL 13230, at *4 (E.D. Pa. June 30, 1987) ("[t]he burden is on Chrysler to establish that such information is not discoverable, since they [sic] are resisting discovery").

There should be little doubt that the additional transaction data being sought is relevant. One well-recognized method for assessing damages in antitrust cases is econometric regression analysis with transaction price as a dependent variable, which compares, among other things, conduct before, during, and after the alleged conspiracy. *See, e.g., Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, 998 F.2d 1224, 1238 (3d Cir. 1993); *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666, at *20 (M.D. Pa. Nov. 19, 2007); *In re Linerboard Antitrust Litig.*, 497 F. Supp. 2d 666, 670 (E.D. Pa. 2007); *In re Carbon Black Antitrust Litig.*, No. A.03-10191, 2005 WL 102966, at *20 (D. Mass. Jan. 18, 2005). Here, the alleged conspiracy operated from January 1, 1990, to and including January 31, 2003. No defendant has produced transaction data for any time prior to the alleged conspiracy. Thus, any regression for determining damages must compare prices during the alleged conspiracy to prices after the alleged conspiracy.

The question then is how much transaction data for the period after the alleged conspiracy is sufficient. *See Petruzzi's*, 998 F.2d at 1238 ("the only possible problem [with the multiple regression analysis] is that the data set used by the experts was incomplete or inaccurate

such that an economist would not rely on it").  The answer is that the more transaction data, the better for the analysis.  In the "Reference Guide on Multiple Regression," *Reference Manual on Scientific Evidence* (2d ed. 2000), Professor Daniel L. Rubinfeld identifies one potential concern with the robustness of a regression result as the sensitivity of the regression to individual data points.  *Id.* at 199; *see also id.* at 217-18.  Professor Rubinfeld implies that the regression results will be more robust as that sensitivity is decreased by increasing the number of data points.  *Id.* Defendants' economic expert, David P. Kaplan, seems to agree, because he suggested that "[t]he potential absence of such [pricing and purchasing] data could, of course, materially limit the ability of any model to predict any alleged overcharge in this matter."  Affidavit of David P. Kaplan, sworn to November 18, 2005, ¶ 139 at 94.

All the other defendants who sold organotins or ESBO and remained in the action at the time of the request to supplement transaction data and Crompton produced transaction data through December 2006.  Only Arkema produced data for a shorter period, eliminating approximately 20% of the post-conspiracy data.  In *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 309 (S.D.N.Y. 1982), certain defendants had agreed to produce requested financial information as to sales and profits for at least three years after the conspiracy had allegedly ended, and the defendants who did not agree to produce any such post-conspiracy financial information were compelled to produce the same information for the same time period. Similarly, Arkema should be compelled to produce transaction data for organotins and ESBO for the same time period that Crompton, Dow/UCC, Ferro and Rohm & Haas have already produced such data.[2]

---

[2] *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428 (E.D. Pa. 2004) ("*MCC*"), is distinguishable on this ground; that is, that here, unlike there, the other defendants produced transaction

Moreover, Arkema's claim of burden in locating and retrieving the requested data rings very hollow in light of the fact that it deliberately chose not to produce its then available transaction data for May through December 2006 at the same time it produced its data for November 2003 through April 2006. The incremental burden to produce the additional data at that time should have been miniscule. It has no one but itself to blame for any additional cost or burden in producing the May through December 2006 data.

Further, direct purchaser plaintiffs have limited the burden of their request. In 2007, plaintiffs sought cost as well as transaction data, and data for all five segments in which Arkema operates – organotins, ESBO, acrylic impact modifiers, MBS and processing aids. On this motion, plaintiffs seek only transaction data and only for two segments: organotins and ESBO.

## III.  CONCLUSION

For the foregoing reasons, direct purchaser plaintiffs respectfully request that the Court grant their motion to compel defendant Arkema to produce transaction data for its sales of organotins and ESBO for May through December 2006.

Dated:  September 3, 2009    Respectfully submitted,

           */s/  Craig W. Hillwig*    .
           Joseph C. Kohn
           William E. Hoese
           Craig W. Hillwig
           KOHN, SWIFT & GRAF, P.C.
           One South Broad Street, Suite 2100
           Philadelphia, PA 19107-3304
           (215) 238-1700

---

data for the requested time period. In addition, in *MCC*, the court strongly suggested that there was no evidence of a conspiracy for the last two years alleged, thereby making the post-conspiracy period of allowed transaction data five, not three, years. *Id.* at 429 & n.1.

Robert N. Kaplan
Gregory K. Arenson
Jason A. Zweig
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980

J. Douglas Richards
Kathleen M. Konopka
COHEN, MILSTEIN, SELLERS & TOLL, P.L.L.C.
150 East 52nd Street
New York, NY 10022
(212) 838-7797

Solomon B. Cera
C. Andrew Dirksen
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
(415) 777-2230

*Plaintiffs' Co-Lead Counsel*

**EXHIBIT A**



February 26, 2007

<u>VIA E-MAIL & U.S. MAIL</u>

John G. Harkins, Jr.
Steven A. Reed
HARKINS CUNNINGHAM LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19103-7042
Email: jharkins@harkinscunningham.com
 sreed@harkinscunningham.com

    Re:    *In Re Plastic Additives Antitrust Litigation (No. II)*, MDL No. 1642
          (*PolyOne Corp. v. Akzo Nobel N.V.*, No. 2:05-CV-3734-LDD)

Dear Counsel:

    We write regarding Rohm & Haas's production of electronic transactional data and P&L data to PolyOne.

    First, we request that Rohm & Haas update its electronic transactional data through December 31, 2006.[1] Rohm & Haas's electronic transactional data is responsive to Plaintiff PolyOne Corporation's First Set of Requests for the Production of Documents, including Request No. 19, and is relevant to the allegations in this case and specifically the determination of damages. Courts have routinely allowed the discovery of this type of post-conspiracy information. *See, e.g., In re Shopping Cart Antitrust Litig.*, 95 F.R.D. 299 (S.D.N.Y. 1982) (ordering the production of economic information for a three-plus year post-conspiracy period); *In re Folding Cart Antitrust Litig.*, 83 F.R.D. 251 (N.D. Ill. 1978) (ordering production of financial information regarding defendants' sales and profits for a three-year post-conspiracy period).

    Second, we request that Rohm & Haas produce its monthly P&L data in electronic format, including data to show Rohm & Haas's fixed and variable costs broken down into their individual cost components, e.g., materials, energy, labor, etc., by product type. This data is responsive to PolyOne's Requests for Production of Documents, including Requests Nos. 29 and 30, and is also relevant to the allegations in this case and specifically the determination of damages. As with its request for the supplemental electronic transactional data, PolyOne requests that Rohm & Haas produce P&L data through December 31, 2006.

    We understand from Rohm & Haas's responses to PolyOne's requests for production that it has generally objected to providing information beyond January 31, 2003. We believe this objection to be without merit.

---

[1] We are informed by counsel for the Class Plaintiffs that they join PolyOne's request to Rohm & Haas to supplement its electronic transactional data and P&L data.

ATTORNEYS AT LAW    CONNECTICUT    SCOTT + SCOTT, LLC    440 247-8200 VOICE
    OHIO    33 RIVER STREET    440 247-8275 FAX
    CALIFORNIA    CHAGRIN FALLS, OH 44022    SCOTTLAW@SCOTT-SCOTT.COM
    WWW.SCOTT-SCOTT.COM

Please inform us by the end of this week whether Rohm & Haas will produce the requested electronic transactional data and P&L data. If your answer is anything other than an unqualified yes, or if have any questions about our requests, we are available this week to meet and confer.

Finally, we request a meet and confer concerning questions PolyOne has about the electronic transactional data Rohm & Haas has already produced, which we understand consists of Rohm & Haas's electronic transactional data from 1990 through 2003. Among the questions we have are the following:

- The definition file "Explanations for SAP Data Extract" does not appear to correspond to all of the transaction data. For example, the data file "RHF TD-2" has alternative variable names. Is there a cross-reference for how the variable names match up with each other in the various transaction data files?

- It appears that the various transaction data files, e.g., "RHF TD-1," "RHF-TD-2," "RHF-TD3," etc., contain data in overlapping periods. Is there a pattern to which transactions are covered in the transaction data files?

- There is a series of variables relating to prior period adjustments. Is there a way to determine to which invoices these prior period adjustments should be applied?

- Does transactional data from before January 1990 exist in electronic format?

- If transactional data from before January 1990 does not exist in electronic format, does it exist in a summary hard copy fashion, e.g., monthly reports?

We have additional questions regarding Rohm & Haas's data, which we would provide you in advance of a meet and confer. The above list contains representative questions but is non-exhaustive. It is our hope that counsel for both parties can address PolyOne's questions concerning Rohm & Haas's electronic transactional data without the need for a Rule 30(b)(6) deposition.

Please let me know your availability this week to meet and confer about these issues.

Sincerely,

Walter W. Noss

cc (via e-mail only):
    C. Andrew Dirksen
    Robert N. Kaplan
    Joseph C. Kohn
    Linda Nussbaum
    Edmund W. Searby

**EXHIBIT B**

# Buchanan Ingersoll & Rooney PC
Attorneys & Government Relations Professionals

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985

T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

Francis X. Taney, Jr.
215 665 3846
francis.taney@bipc.com

April 10, 2007

GOLD BENNETT CER^
& S*

APR 1 1 2007

**RECEIVED**

**VIA UPS**

C. Andrew Dirksen, Esquire
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94015-2835

Walter W. Noss, Esquire
Scott + Scott, LLC
33 River Street
Chagrin Falls, OH 44022

Guido Saveri, Esquire
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111

Krishna B. Narine, Esquire
LAW OFFICE OF KRISHNA B. NARINE
7839 Montgomery Avenue, 3rd Floor
Elkins Park, PA 19027

Re:  ***In Re Plastics Additives Antitrust Litigation***
***Competition Collision Center LLC v. Crompton Corporation, et al.***

Dear Counsel:

I have enclosed a CD-Rom Bates numbered ARK123754 that contains Arkema Inc.'s SAP raw transactional sales data for the divisions that made plastics additives products for the time period November 2003 through April 2006.

Arkema has designated the information in this production as Highly Confidential pursuant to the terms of the Stipulated Protective Order entered on October 5, 2004 in the above-referenced action, with respect to which PolyOne executed a Confidentiality Agreement on March 1, 2005, and they should be treated accordingly.

Very truly yours,

Francis X. Taney, Jr.

Enclosure

**EXHIBIT C**

# Buchanan Ingersoll & Rooney PC
### Attorneys & Government Relations Professionals

**Steven E. Bizar**
215 665 3826
steven.bizar@bipc.com

1835 Market Street
14th Floor
Philadelphia, PA  19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

June 4, 2007

*VIA ELECTRONIC MAIL,*
*FACSIMILE AND REGULAR MAIL*

C. Andrew Dirksen, Esquire
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA  94015-2835

William E. Hoese, Esquire
Kohn, Swift, & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107

**Re:** **In re Plastics Additives Antitrust Litigation**

Dear Andrew and Bill:

I write to respond to your request that our client, Arkema Inc. ("Arkema"), supplement its production of transactional sales data — and presumably cost data as well — through December 31, 2006. Compliance with your request would impose a heavy burden on Arkema's ongoing business operations. We also are not aware of any legal basis for requiring Arkema to produce an additional nine months of post-conspiracy period transactional data — or four years in total — in a case like this one, where there is no allegation of a continuing conspiracy, and Arkema has already produced post-conspiracy period transactional data through April 2006, or more than three years after the alleged January 31, 2003 end-point of the claimed conspiracy. We therefore decline to supplement our production through December 31, 2006.

To place this decision in context, let me briefly compare what has already occurred in this case with the legal requirements. As I am sure you already know, Arkema, in addition to providing an extraordinarily voluminous production of hard copy and electronic documents and depositions of 17 current or former employees, initially produced transactional sales data for its sales of the plastics additives products it manufactures — acrylic impact modifiers, ESBO, MBS impact modifiers, tin stabilizers and acrylic processing aids — for a longer period of time than 8 of the 9 other defendants, i.e., from January 1994 through November 2003. Arkema subsequently supplemented its production of transactional data by producing sales data through April 2006 — i.e., covering a period of more than three years after the close of the alleged conspiracy period in January 2003 — and also supplied cost data for this period to the extent it exists. Arkema is currently completing its production of cost data. In short, Arkema has already produced more data than virtually all of the defendants and has produced data spanning a period that extends 39 months after the end of the alleged conspiracy period.

The process of producing transactional sales data is extremely expensive, time-consuming, and burdensome for a company like Arkema, whose IS&T group is thinly staffed and already fully engaged in supporting the company's business operations. Data must be located, retrieved, restored, processed and carefully checked before it can be produced. Sometimes special computer programs must be written to allow the production to proceed. Sometimes mistakes occur and the process must be repeated. Each of these productions takes programmers and operators away from the important work they would otherwise be doing to support the company's business. To date, plaintiffs have not been charged for any of these activities and Arkema has borne both the cost as well as the burden and disruption of providing the very broad transactional discovery that has been requested.

The case law makes it clear that nothing further is required of Arkema at this time. While there are several cases that expressly address this issue, I refer you to one MDL class action antitrust case in this district, In re Microcrystalline Cellulose Antitrust Litigation, 221 F.R.D. 428 (E.D. Pa. 2004), which is particularly on point. In that case, as here, the defendants had voluntarily produced transactional sales data for a period of three years after the class conspiracy period ended. The plaintiffs nonetheless filed a motion seeking to compel a further production because their expert economist had stated that the additional years would be helpful "to ensure a more complete and precise analysis of post-class period benchmark prices and damages." Id. at 430. The district court denied the motion to compel, holding that the three years of sales data already produced (i.e., less than Arkema has already produced in this case) would be sufficient to meet all of the plaintiffs' discovery needs:

> "[O]ne would expect the market to change enough within three years to show that the alleged allocation affected prices. While recognizing that a broad scope of discovery in this large class action is appropriate, I conclude that plaintiffs' request for sales data through the end of 2003 is unreasonable given the minimal potential benefits of this information. I acknowledge that sales and pricing data after the end of the allegedly anticompetitive conduct are needed in order to prove liability and calculate damages with the chosen methodologies, but I am not convinced that plaintiffs require more than three years of such data to conduct a meaningful "before and after" analysis. In denying this Motion to Compel, I do not find that plaintiffs will be deprived of any discovery materials that are reasonably necessary in developing and preparing their case." (at 430).

Id. Other courts have reached a similar result in limiting the scope in time of post-conspiracy discovery to three years or rejecting it altogether. See, e.g., In re Automotive Refinishing Print Antitrust Litig., 229 F.R.D. 482 (E.D. Pa. 2005) (rejecting the production of documents in the three year period after the conspiracy allegedly ended); In re Shopping Carts Antitrust Litig., 95 F.R.D. 299 (S.D.N.Y 1982) (limiting production to three years after the class conspiracy period ended).

In sum, we believe that Arkema has already provided plaintiffs with all of the transactional sales data to which they are entitled — save for the production of additional cost data, which should be completed shortly. Indeed, Arkema's approach to its discovery obligations stands in stark contrast to class plaintiffs, who have failed to meet their discovery obligations — most recently by the sophistic approach employed with regard to the Moritz testimony and plaintiffs' refusal to answer the Defendants' contention interrogatories.

If you would like to discuss this further, feel free to call me at any time.

Very truly yours,

Steven E. Bizar

SEB/rtb

cc:     All Counsel of Record (by electronic mail and regular mail)
        Edmund W. Searby, Esquire (by electronic mail and regular mail)
        Walter W. Noss, Esquire (by electronic mail and regular mail)
        Howard D. Scher, Esquire
        Francis X. Taney, Jr., Esquire
        Thomas P. Manning, Esquire

**EXHIBIT D**

# GOLD BENNETT CERA & SIDENER LLP

## ATTORNEYS AT LAW

595 MARKET STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94105-2835

TELEPHONE (415) 777-2230
TELECOPIER (415) 777-5189

C. ANDREW DIRKSEN
cdirksen@gbcslaw.com

DAVID B. GOLD
(1926-1994)

June 8, 2007

<span style="text-decoration: underline">**VIA EMAIL AND FACSIMILE**</span>

Steven E. Bizar, Esq.
Buchanan Ingersoll PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103

      Re:    *In re Plastics Additives Antitrust Litigation*

Dear Steve:

I write in response to your June 4, 2007 letter, concerning the refusal of your client, Arkema Inc. ("Arkema"), to produce May through December 2006 transactional sales and cost data.

First, your letter does not specifically explain why production of this additional eight (8) months of data will be "extremely expensive, time-consuming, and burdensome." That production of this data will cause undue burden is surprising, if only in light of Arkema's prior production of more than twelve (12) years of data.

Second, generally speaking, the longer a conspiracy period, the more important it is to have substantial post-conspiracy period data for use by damages experts. In this case, the conspiracy period is from *January 1990 through January 2003*. The *Microcrystalline Cellulose* ("*MCC*") case that you cite is distinguishable for several reasons, but importantly because, here, with the exception of your client's data, our experts already have nearly all of the 2006 sales data from the other defendants. In *MCC*, the Court believed that there would be "minimal potential benefits" from the production of the requested additional three (3) years of post-conspiracy data. Here, the *eight months* of additional Arkema data that we are requesting *will* be beneficial, because a more thorough analysis of defendants' post-conspiracy period prices – during the approximately four (4) years following the thirteen (13) year conspiracy – will be able to be performed.

Please advise whether Arkema will modify its position as set forth in your June 4 letter and, if not, please provide specifics as to the expense and burden involved in producing this data.

Very truly yours,

C. Andrew Dirksen

#117234

cc:     Plaintiffs' Co-Lead Counsel (via e-mail)
        Walter Noss, Esq. (via e-mail)

**EXHIBIT E**

# Buchanan Ingersoll ⚕ Rooney PC
Attorneys & Government Relations Professionals

Steven E. Bizar
215 665 3826
steven.bizar@bipc.com

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

June 18, 2007

GOLD BENNETT CERA

JUN 2 2 2007

RECEIVED

**VIA ELECTRONIC MAIL AND REGULAR MAIL**

C. Andrew Dirksen, Esq.
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835

Re:    In re Plastics Additives Antitrust Litigation

Dear Andrew:

I have received your letter dated June 8, 2007, concerning plaintiffs' request that Arkema Inc. produce an additional eight months of transactional sales and cost data. Arkema Inc. maintains its position that it will not produce transactional data beyond that previously provided to plaintiffs.

As you know, Arkema Inc. has already produced more than twelve years of data, which was a long, difficult and expensive undertaking. In fact, Arkema Inc. has produced more class period transactional data than any other defendant and has already produced three years of post-class period data, which is more than sufficient and which is already at the outer limit of what plaintiffs could reasonably claim to need. *See In re Microcrystalline Cellulose Antitrust Litigation.* 2221 F.R.D. 428 (E.D. Pa. 2004) (explaining that plaintiffs did not require more than three years of post-alleged conspiracy transactional data). Arkema Inc. has also undertaken the burden and is still in the process of completing the compilation of production and cost data for a period of three-years after the class period. As you know, the process of producing cost data is even more burdensome than the already onerous process of producing transactional sales data and we have been working cooperatively with plaintiffs to resolve plaintiffs' questions regarding the cost data.

Your letter provides no basis for plaintiffs to force Arkema Inc. to bear the costs of producing eight additional months of data. You claim, without any support, that the longer a conspiracy period, the more important it is to have substantial post-conspiracy data. In fact, the conspiracy alleged in the *Microcrystalline Cellulose* case was alleged to have lasted 13 years—*the exact same length of time alleged in this case.* Your attempt to distinguish *Microcrystalline Cellulose* completely fails. You claim that the additional sales data here, unlike in that case, will allow a more thorough analysis of defendants' post-alleged conspiracy prices. However, the

---

plaintiffs in *Microcrystalline Cellulose* made that exact same argument, (*see id* at 430 (explaining that plaintiffs' expert "stated specifically that he would like to see the data set of FMC sales extended [beyond three years after the conspiracy] in order to 'ensure a more complete and precise analysis of post-class period benchmark prices and damages")), and the court there flatly rejected plaintiffs' request, finding that three years of data was sufficient for plaintiffs' purposes and that plaintiffs' request for additional data was "unreasonable." *Id.*

Extracting and compiling the transactional sales and cost data takes both human attention and system processing time away from Arkema Inc.'s business operations, and is not a burden that should be done without substantial need for the information. We have been informed that, for the transactional data alone, it will take up to five working days to extract the data from the system, and up to two additional weeks to prepare the data in a form to be used by plaintiffs. The time, expense and effort to produce additional costs data would be even greater, given the greater complexity of that data. Whether other defendants have produced information beyond three years is irrelevant to whether Arkema Inc. must interrupt its business operations and bear the costs and burden of compiling data that has "minimal potential benefits," *id.* at 430, to this case.

Sincerely yours,

Steven E. Bizar

SEB/rb
cc:      Howard D. Scher, Esquire

## CERTIFICATE OF SERVICE

I , Craig W. Hillwig hereby certify that on September 3, 2009 a copy of the foregoing Direct Purchaser Plaintiffs' Motion To Compel Defendant Arkema Inc. To Produce Certain Transaction Data and supporting Memorandum of Law were filed electronically and are available for viewing and downloading from the Court's ECF System, which provides electronic notice to the following:

STEVEN E. BIZAR
bizarse@bipc.com

ANTHONY J. BOLOGNESE
abolognese@bolognese-law.com

NATHANAEL M. COUSINS
nat.cousins@usdoj.gov
marc.siegel@usdoj.gov

CHARLES ANDREW DIRKSEN
cdirksen@gbcslaw.com
efilingnotices@gbcslaw.com
cdl@gbcslaw.com

NATHAN P. EIMER
neimer@eimerstahl.com
fharvey@eimerstahl.com
abrown@eimerstahl.com

CARL N. FRANKOVITCH
carln@facslaw.com

JOHN G. HARKINS , JR
jharkins@harkinscunningham.com
mstrohmeyer@harkinscunningham.com

RYAN S. HEDGES
rhedges@eimerstahl.com
erogers@eimerstahl.com
fharvey@eimerstahl.com
adreyer@eimerstahl.com

WAYNE A. MACK
wamack@duanemorris.com

THOMAS P. MANNING
manningtp@bipc.com

THOMAS J. MCGARRIGLE
tmcgarrigle@reedsmith.com

ROBERT L. MURKEN
rmurken@harkinscunningham.com
apreviti@harkinscunningham.com
rmurken@gmail.com

DIANNE M. NAST
dnast@rodanast.com

STEIG D. OLSON
solson@cmht.com

J. MANLY PARKS
jmparks@duanemorris.com

WILLIAM H. ROBERTS
roberts@blankrome.com

JAMES J. RODGERS
jrodgers@dilworthlaw.com

JILL ROGERS SPIKER
jill.spiker@bipc.com

CRAIG W. HILLWIG
chillwig@kohnswift.com
info@kohnswift.com
cspagna@kohnswift.com

WILLIAM E. HOESE
whoese@kohnswift.com
jburt@kohnswift.com

LANDON Y. JONES
landon.jones@bipc.com

ROBERT N. KAPLAN
rkaplan@kaplanfox.com

COLIN R. KASS
ckass@kirkland.com

RICHARD J. KILSHEIMER
rkilsheimer@kaplanfox.com

JOSEPH C. KOHN
jkohn@kohnswift.com

HOWARD D. SCHER
scherhd@bipc.com

STEVEN O. SIDENER
ssidener@gbcslaw.com
cgw@gbcslaw.com

COLLEEN HEALY SIMPSON
csimpson@harkinscunningham.com
mstrohmeyer@harkinscunningham.com

SCOTT C. SOLBERG
ssolberg@eimerstahl.com
fharvey@eimerstahl.com
abrown@eimerstahl.com

PATRICK A. TILLOU
ptollou@cohenmilstein.com

A. PAUL VICTOR
pvictor@deweyballantine.com

JASON A. ZWEIG
jzweig@kaplanfox.com

I further certify that on September 3, 2009, I served copies of Direct Purchaser Plaintiffs'

Motion To Compel Defendant Arkema Inc. To Produce Certain Transaction Data on the

following persons by electronic mail addressed as follows:

**ATTORNEYS FOR ROHM & HAAS COMPANY**

    John G. Harkins, Jr. <jharkins@harkinscummingham.com>
    Colleen Healy Simpson <csimpson@harkinscunningham.com>

**ATTORNEYS FOR ARKEMA, INC.**

    Howard D. Scher <howard.scher@bipc.com>
    Steven Bizar <steven.bizar@bipc.com>
    Francis X. Taney, Jr. <francis.taney@bipc.com>

**ATTORNEYS FOR UNION CARBIDE CORPORATION**

Ryan S. Hedges <RHedges@EimerStahl.com>
Nathan P. Eimer <NEimer@EimerStahl.com>
Scott C. Solberg <ssolberg@EimerStahl.com>


**ATTORNEYS FOR THE DOW CHEMICAL COMPANY**

Tefft W. Smith <tsmith@kirkland.com>
Colin R. Kass  <ckass@kirkland.com>


Dated: September 3, 2009            /s/*Craig W. Hillwig*_____
                                    Craig W. Hillwig