## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE PLASTICS ADDITIVES ANTITRUST LITIGATION | : <br> : <br> : <br> : Master Docket No. 2:03-CV-2038-LDD <br> : |
| THIS DOCUMENT RELATES TO: | : MDL No. 1684 <br> : |
| *Gitto/Global Corp. v. Rohm & Haas Co., et al.*, No. 03-CV-2038 (Direct Purchaser Class Action) | : <br> : <br> : <br> : <br> : |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2009, upon consideration of Direct Purchaser Plaintiffs' Motion to Compel Defendant Arkema Inc. to Produce Certain Transaction Data, and Defendant Arkema Inc.'s response thereto, it is **HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT

_____
Legrome D. Davis, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE PLASTICS ADDITIVES ANTITRUST LITIGATION | : : : |
|  | : Master Docket No. 2:03-CV-2038-LDD |
| THIS DOCUMENT RELATES TO: | : : MDL No. 1684 |
| *Gitto/Global Corp. v. Rohm & Haas Co., et al.,* No. 03-CV-2038 (Direct Purchaser Class Action) | : : : : : : |

## RESPONSE IN OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL DEFENDANT ARKEMA INC. TO PRODUCE CERTAIN TRANSACTIONAL DATA

Defendant Arkema Inc. respectfully submits this response in opposition to Direct Purchaser Plaintiffs' Motion to Compel (Docket No. 456).

## INTRODUCTION

To date, Arkema Inc. has produced more than 12 years of transactional data to Plaintiffs, including 39 months of post-alleged conspiracy transactional data. In fact, Arkema Inc. has produced more transactional and cost data than any of the other manufacturers in this case. Nevertheless, Plaintiffs now seek an order compelling Arkema Inc. to produce an additional 8 months of post-alleged conspiracy transactional data. But glaringly absent from Plaintiffs' motion is any statement from their economic expert that the additional data is necessary in order for him to conduct his analysis or for Plaintiffs to prepare their case. This is not surprising, because more than three years ago, Plaintiffs' economic expert stated that 24 to 30 months of post-alleged con-

spiracy transactional data would be sufficient for him to compare pricing for plastics additives during and after the alleged conspiracy.[1]

Arkema Inc. has more than met its discovery obligations. The 39 months of post-alleged conspiracy data Arkema Inc. produced already goes beyond the outer limit of 36 months of data that courts have approved in similar cases. Producing the 12 years of data that Arkema Inc. has already provided to Plaintiffs was a long, difficult and expensive undertaking. Arkema Inc. has been diligent in meeting its discovery obligations, and it should not be saddled with an additional burden of compiling, analyzing and producing data that Plaintiffs' own expert does not claim to need. In weighing the burden and expense of production against the likely benefit that the information will provide, as the Court must do under Rule 26(b)(2)(C), the balance is clear: Arkema Inc. should not be compelled to produce more than the extraordinary volume of data it has already produced.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' summary of the communications between counsel regarding Arkema's supplemental transactional data leaves out a few important facts. It is true that by letter dated February 26, 2007, Walter W. Noss, counsel for PolyOne (which filed an individual lawsuit based upon the same conspiracy alleged by the class representatives), wrote to Howard D. Scher and Francis X. Taney, counsel for Arkema Inc., asking that Arkema Inc. supplement its production of

---

[1] *See* Reply Affidavit of John C. Beyer, Ph.D. (filed <u>under seal</u> as Exhibit 1 in Appendix of Exhibits to Plaintiffs' Reply Memorandum in support of Plaintiffs' Motion for Class Certification) at ¶ 79 ("[T]he post-conspiracy period will have, after discovery is completed, millions of transactions **covering 24 to 30 months**, which would be compared systematically with a similar period during the alleged conspiracy.")

electronic transactional data to include data through December 31, 2006 (attached as Exhibit 1).[2] Noss included a footnote in that letter stating that Class Plaintiffs joined in PolyOne's request, and Joseph C. Kohn, counsel for the direct purchaser class plaintiffs, was listed as a carbon copy recipient of the letter.

Additional communications among counsel, however, reveal that PolyOne (speaking with the tacit approval of Class Plaintiffs for purposes of the negotiations) later *agreed* to limit Arkema Inc.'s production to data up through April 2006—Kohn was copied on that correspondence as well. On March 2, 2007, Arkema Inc. responded to PolyOne, offering to "produce transactional data through the end of the first quarter of 2006, assuming that PolyOne would be willing to produce transactional data relating to its purchases of Plastics Additives . . . for the same time period," and asking whether this was acceptable to PolyOne (attached as Exhibit 2). On March 8, 2007, PolyOne replied to Arkema Inc., accepting Arkema Inc.'s production of electronic post-2003 transactional data through the end of the first quarter of 2006 in exchange for PolyOne producing its electronic purchase data for the same period (attached as Exhibit 3). This letter also listed counsel for the direct purchaser class plaintiffs as a carbon copy recipient.

The result of those negotiations was that Arkema Inc. produced data through April of 2006, which covered a period of *more* than three years after the close of the alleged conspiracy period in January 2003. (*See* Ex. B to Pls.' Mot.) This supplemental production followed Arkema Inc.'s extraordinarily voluminous production of hard copy and electronic documents, the depositions of 17 current or former Arkema Inc. employees, and the production of its transactional sales data from January 1994 through November 2003 for all five categories of "plastics addi-

---

[2] While Exhibit A attached to Plaintiffs' Motion is not the letter to Howard D. Scher and Francis X. Taney, Plaintiffs correctly described the letter, which is attached to this response as Exhibit 1.

tives" products it manufactures — acrylic impact modifiers, ESBO, MBS impact modifiers, tin stabilizers and acrylic processing aids.

Arkema Inc.'s decision to limit its production of data to April of 2006 was based on both the case law regarding the relevant post-alleged conspiracy time period and the burden of producing additional months of data, which would need to be located, retrieved, restored, processed and carefully checked before it could be produced. Such productions require significant expenditures of personnel resources and take programmers and operators away from the important work they would otherwise be doing to support the company's business operations. Indeed, even if the production of transactional data sought in Plaintiff's Motion to Compel were limited to data for the categories of tin stabilizers and ESBO, it would take Arkema Inc. up to five working days to extract the data from its system, and up to two additional weeks to prepare the data in the form to be used by Plaintiffs. This process would take up the time and attention of Arkema Inc.'s information technology department, the staff of which has recently been reduced due to the economic slowdown and department reorganization. The department is already fully engaged in supporting the company's business operations, including the coordination of the existing information systems of Arkema Inc. and the information systems of new acrylate and latex businesses that Arkema has recently acquired from The Dow Chemical Company.

## ARGUMENT

"All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)," Fed. R. Civ. P. 26(b)(1), which provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the

importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). Given these limitations on discovery, Arkema Inc. should not be required to produce more than the 39 months of post-alleged conspiracy transactional data that it has already produced to Plaintiffs.

The case that most closely parallels the present case is one that Plaintiffs have tried unsuccessfully to distinguish: *In re Microcrystalline Cellulose Antitrust Litigation*, 221 F.R.D. 428 (E.D. Pa. 2004). The conspiracy alleged in the *Microcrystalline Cellulose* case was alleged to have lasted 13 years—*the exact same length of time alleged in this case*. In that case, as here, the defendants had voluntarily produced transactional sales data for a period of three years after the class conspiracy period ended. The plaintiffs nonetheless filed a motion seeking to compel a further production because their expert economist had stated that the additional years would be helpful "to ensure a more complete and precise analysis of post-class period benchmark prices and damages." *Id.* at 430. The district court denied the motion to compel, holding that the three years of sales data already produced (less than Arkema Inc. has already produced in this case) would be sufficient to meet all of the plaintiffs' discovery needs:

> [O]ne would expect the market to change enough within three years to show that the alleged allocation affected prices. While recognizing that a broad scope of discovery in this large class action is appropriate, I conclude that plaintiffs' request for sales data through the end of 2003 is unreasonable given the minimal potential benefits of this information. I acknowledge that sales and pricing data after the end of the allegedly anticompetitive conduct are needed in order to prove liability and calculate damages with the chosen methodologies, but I am not convinced that plaintiffs require more than three years of such data to conduct a meaningful "before and after" analysis. In denying this Motion to Compel, I do not find that plaintiffs will be deprived of any discovery materials that are reasonably necessary in developing and preparing their case.

*Id.* at 430.

Plaintiffs' attempts to distinguish *Microcrystalline Cellulose* fall flat. First, Plaintiffs argue that, unlike some of Arkema Inc.'s co-defendants, the other defendants in *Microcrystalline Cellulose* did not produce data beyond the three year period. (Pl.'s Mot. at 5 n.2.) However, the

opinion in *Microcrystalline Cellulose* gives no indication that the court would have ruled differently if some of the other defendants had produced such data. The basis of the court's' ruling was that three years after then end of an alleged conspiracy is a sufficient time period to compare pricing behavior during and after an alleged price-fixing conspiracy. Plaintiffs here offer no explanation for why that generous time period is insufficient in this case.

Plaintiffs also argue that the court in *Microcrystalline Cellulose* "strongly suggested" that there was no evidence of conspiracy for the last two years alleged. (Pl.'s Mot. at 5 n.2.) This is incorrect. First, the court makes no such "strong suggestion" – it merely notes that defendants dispute the existence of a conspiracy alleged. Second, and more importantly, the court expressly states that it was "assum[ing] for purposes of this Motion that the alleged conspiracy ended in 1997." *Microcrystalline Cellulose*, 221 F.R.D. at 430. The court's reasoning in *Microcrystalline Cellulose* is well thought out and supports Arkema Inc.'s objection to producing additional data. If anything, the Plaintiffs in the *Microcrystalline Cellulose* case had a stronger argument than Plaintiffs here, because their request was based upon a statement by their expert that the additional data would be helpful. In this case, Plaintiffs' expert has made no such statement. On the contrary, Dr. Beyer has suggested that 24 to 30 months of data are sufficient. *See supra,* note 1.

Furthermore, courts have reached similar results in other cases, limiting the scope of post-conspiracy discovery to three years or less after the alleged conspiracy—if not rejecting such discovery altogether. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 496 (E.D. Pa. 2005) (rejecting request for production of documents in the three year period after the conspiracy allegedly ended); *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299 (S.D.N.Y 1982) (limiting production to three years after the class conspiracy period ended). Nor do the authorities cited by Plaintiffs provide otherwise. *See In re High Fructose Corn Syrup Anti-*

*trust Litig.*, Nos. MDI, 1087, 951477, 2000 WL 33180834 (C.D. Ill. July 19, 2000) (denying class plaintiffs' request that defendants supplement their transactional data through four and a half years after the alleged end of the conspiracy period because of the timing of plaintiffs' request, and noting "[i]t is highly doubtful that Class Plaintiffs would have ever been entitled to three additional years of data," where defendants had already produced a year and a half of post-conspiracy transactional data); *In re Seagate Technology II Sec. Litig.*, No. C-89-2493 (A)-VRW, 1993 WL 293008, *1 (N.D. Cal. June 10, 1993) (noting that the time period defined in the subpoenas was "narrowly crafted to avoid undue burden on the subpoenaed parties . . . [because it began] only five months before the start of the class period and end[ed] four months after its close"). *See also Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1237 & 1241 (3d Cir. 1993) (deciding that one year of data was not an adequate sample size for the price study at issue).

In the face of this authority, Plaintiffs advance a proposition with no stopping point: "The answer is that the more transaction data, the better for the analysis." (Pls.' Mem. at 5.) But more is *not* always better. Even setting aside issues of burden on the producing party, in a time series context such as this, the additional data is further and further removed from the alleged conspiracy and may become less and less suitable to use as a benchmark. *See* William H. Page, ed., *Proving Antitrust Damages* 177 (1996) ("[O]ver time, demand and supply conditions change from what they were during the estimation period. As a result, when one predicts the 'but for' price, one is necessarily forecasting outside the sample range. The effect of this is to reduce the precision of the estimate in the sense that the standard error will be high. This, in turn, means that it will be hard to determine how much of any observed price differential is due to collusion and how much is due to random error."). In other words, not only are there diminishing returns

from additional data further removed from the alleged conspiracy period, the additional data, to the extent it reflects the operation of evolved market dynamics, may actually serve to confound the results and lead to greater inaccuracy.

Application of Plaintiffs' facially preposterous "more is always better" rule would always call for the production of data, for as long as the case drags on, regardless of burden. It is not surprising that courts, academics, and Plaintiffs' own expert all reject it. Arkema Inc. has already produced far more than the 24 to 30 months of data that Plaintiffs' own expert, Dr. Beyer, contemplated.

Finally, Plaintiffs' argument that the Court should disregard the significant burden of the production that they seek also fails. First, Arkema Inc. reached an agreement with counsel for PolyOne, whose request Direct Purchaser Plaintiffs had joined, as to the time period for the supplemental production of transactional data. (*See* Exs. 2 & 3; *see also* Ex. B to Pls.' Mot.) Second, contrary to Plaintiffs' assertion, the burden to produce the transactional data after April of 2006 was not miniscule at the time of the supplemental production, and the burden has only increased since then as a result of staff reductions resulting from the current economic downturn. Finally, the Rules do not permit courts to disregard the burden or expense of proposed discovery, but rather provide that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). Under the facts presented here, Arkema Inc. should not be required to incur the burden of supplementing its production of transactional data.

## CONCLUSION

For the foregoing reasons, Defendant Arkema Inc. respectfully requests that this Court

deny Plaintiffs' motion to compel.

Date: September 21, 2009

Respectfully submitted,


/s/ Howard D. Scher
Howard D. Scher
Steven E. Bizar
Francis X. Taney, Jr.
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-8700
(215) 665-8760 (fax)

On behalf of defendant Arkema, Inc.

EXHIBIT 1



February 26, 2007

VIA E-MAIL & U.S. MAIL

Howard D. Scher
Francis X. Taney
BUCHANAN INGERSOLL & ROONEY PC
1845 Market Street
14th Floor
Philadelphia, PA 19103-2985
Email: howard.scher@bipc.com
        francis.taney@bipc.com

Re: *In Re Plastic Additives Antitrust Litigation (No. II)*, MDL No. 1642
(*PolyOne Corp. v. Akzo Nobel N.V.*, No. 2:05-CV-3734-LDD)

Dear Counsel:

We write regarding Arkema's production of electronic transactional data and P&L data to PolyOne.

First, we request that Arkema update its electronic transactional data through December 31, 2006.[1] Arkema's electronic transactional data is responsive to Plaintiff PolyOne Corporation's First Set of Requests for the Production of Documents, including Request No. 19, and is relevant to the allegations in this case and specifically the determination of damages. Courts have routinely allowed the discovery of this type of post-conspiracy information. *See, e.g., In re Shopping Cart Antitrust Litig.*, 95 F.R.D. 299 (S.D.N.Y. 1982) (ordering the production of economic information for three-year post-conspiracy period); *In re Folding Cart Antitrust Litig.*, 83 F.R.D. 251 (N.D. Ill. 1978) (ordering production of financial information regarding defendants' sales and profits for a three-year post-conspiracy period).

Second, we request that Arkema produce its monthly P&L data in electronic format, including data to show Arkema's fixed and variable costs broken down into their individual cost components, e.g., materials, energy, labor, etc., by product type. This data is responsive to PolyOne's Requests for Production of Documents, including Requests Nos. 29 and 30, and is also relevant to the allegations in this case and specifically the determination of damages. As with its request for the supplemental electronic transactional data, PolyOne requests that Arkema produce P&L data through December 31, 2006.

We understand from Arkema's responses to PolyOne's requests for production that it has generally objected to providing information beyond January 31, 2003. We believe this objection to be without merit.

---

[1] We are informed by counsel for the Class Plaintiffs that they join PolyOne's request to Arkema to supplement its electronic transactional data and P&L data.

Please inform us by the end of this week whether Arkema will produce the requested electronic transactional data and P&L data. If your answer is anything other than an unqualified yes, or if you have any questions about our requests, we are available this week to meet and confer.

Finally, we request a meet and confer concerning questions PolyOne has about the electronic transactional data Arkema has already produced, which we understand consists of the following: (1) Arkema AMPS Data from January 1994 to May 1998 and (2) Arkema SAP Data from June 1998 to December 2003. Among the questions we have are the following:

- The AMPS data from January 1994 to May 1998 was produced in an unrecognized file format. Is there a program that can read this data and will Arkema make a copy of it available to PolyOne's outside counsel?

- When the AMPS data is imported into an Excel spreadsheet, the columns are not labeled (nor properly aligned). What does each column represent?

- Arkema's SAP data from June 1998 to December 2003 is produced in almost 200 different smaller Excel spreadsheets. How do these components fit together? What do these various spreadsheets mean, e.g., what's the difference between "Billing Detail" and "Order Detail"? Is there a master spreadsheet for this data?

- Does transactional data from before January 1994 exist in electronic format?

- If transactional data from before January 1994 does not exist in electronic format, does it exist in a summary hard copy fashion, e.g., monthly reports?

We have additional questions regarding the AMPS and SAP data, which we would provide you in advance of a meet and confer. The above list contains representative questions but is non-exhaustive. It is our hope that counsel for both parties can address PolyOne's questions concerning Arkema electronic transactional data without the need for a Rule 30(b)(6) deposition.

Please let me know your availability this week to meet and confer about these issues.

Sincerely,

Walter W. Noss

cc (via e-mail only):
C. Andrew Dirksen
Robert N. Kaplan
Joseph C. Kohn
Linda Nussbaum
Edmund W. Searby

EXHIBIT 2

Francis X. Taney, Jr.
215 665 3846
francis.taney@bipc.com

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

March 2, 2007

**VIA UPS AND ELECTRONIC MAIL**

Walter W. Noss, Esquire
Scott & Scott, LLC
33 River Street
Chagrin Falls, OH 44022

    Re:    <u>In Re Plastics Additives Antitrust Litigation</u>

Dear Walter:

    We have received your February 26, 2007 letter. With respect to the request for post 2003 transactional data, Arkema would be willing to produce transactional data through the end of the first quarter of 2006, assuming that PolyOne would be willing to produce transactional data relating to its purchases of Plastics Additives, as well as the data relating to PolyOne's sales of products manufactured using Plastics Additives for the same time period. I note that this would give PolyOne in excess of three years' data past January 31, 2003, the purported end date of the alleged conspiracy. Please advise if this is acceptable to PolyOne.

    With respect to your request for the production of P&L data, this data is not as easily identified or gathered. We are in the process of determining what data Arkema has and will advise you with respect to that issue next week.

    Your letter also contains a number of questions regarding both the AMPS and SAP-era transactional data Arkema provided. Arkema has already answered numerous technical questions from class plaintiffs regarding the AMPS and SAP data, and I have enclosed with the hard copy of this letter class plaintiffs' questions and Arkema's responses for your reference. The Coordination Order requires PolyOne to coordinate with class plaintiffs to avoid duplicative and cumulative discovery, and we therefore suggest that you review these questions and answers and

determine whether they answer the questions you have. If there are any other questions that these letters do not answer, then please give them to us in writing so that we can confer with the appropriate people to obtain the answers for you in writing, if possible. In our experience, we have found that the process goes more smoothly if we simply obtain and convey the technical information without lawyer to lawyer meetings.

Very truly yours,

Francis X. Taney, Jr.

FXT/lm
Enclosures



# Shipment Receipt

(Keep this for your records.)

**Transaction Date** 02 Mar 2007

### Address Information

**Ship To:**
Scott & Scott LLC
Walter W. Noss
33 River Street
CHAGRIN FALLS OH 44022-3004

**Shipper:**
Buchanan Ingersoll & Rooney PC
Francis X. Taney, Jr.
2156653846
1835 Market Street
14th Floor
PHILADELPHIA PA 19103

**Ship From:**
Buchanan Ingersoll & Rooney PC
Francis X. Taney, Jr.
2156653846
1835 Market Street
14th Floor
PHILADELPHIA PA 19103

### Shipment Information

**Service:**
*Guaranteed By:
**Quantum View Notify** $^{SM}$ **1:**
 Delivery; Exception
**E-mail Failure Notification:**

UPS Next Day Air
10:30 AM, Mon. 5 Mar. 2007
francis.taney@blpc.com

martuccilm@blpc.com

### Package Information

**Package 1 of 1**
Tracking Number:
Package Type:
Actual Weight:
Billable Weight:
TK Name:
C/M #:

1Z78A87E0194996419
UPS Letter
Letter
Letter
F. X. Taney, Jr.
0048572-000005

### Billing Information

**Bill Shipping Charges to:**

Shipper's Account 78A87E

**All Shipping Charges in USD**

\* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

**Responsibility for Loss or Damage**
Unless a greater value is recorded in the declared value field as appropriate for the UPS shipping system used, the shipper agrees that the released value of each package covered by this receipt is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation. If additional protection is desired, a shipper may increase UPS's limit of liability by declaring a higher value and paying an additional charge. UPS does not accept for transportation and shipper's requesting service through the Internet are prohibited from shipping packages with a value of more than $50,000. The maximum liability per package assumed by UPS shall not exceed $50,000, regardless of value in excess of the maximum. Claims not made within nine months after delivery of the package (sixty days for international shipments), or in the case of failure to make delivery, nine months after a reasonable time for delivery has elapsed (sixty days for international shipments), shall be deemed waived. The entry of a C.O.D. amount is not a declaration of value for carriage purposes. All checks or other negotiable instruments tendered in payment of C.O.D. will be accepted by UPS at shipper's risk. UPS shall not be liable for any special, incidental, or consequential damages. All shipments are subject to the terms and conditions contained in the UPS Tariff and the UPS Terms and Conditions of Service, which can be found at www.ups.com.

# EXHIBIT 3



March 8, 2007

VIA E-MAIL & U.S. MAIL

Francis X. Taney
BUCHANAN INGERSOLL & ROONEY PC
1845 Market Street
14th Floor
Philadelphia, PA 19103-2985
Email: francis.taney@bipc.com

Re: *In Re Plastic Additives Antitrust Litigation (No. II)*, MDL No. 1642
(*PolyOne Corp. v. Akzo Nobel N.V.*, No. 2:05-CV-3734-LDD)

Dear Frank:

I write to confirm our telephone conversation today regarding Arkema's production of electronic transactional data and P&L data to PolyOne.

First, regarding Arkema's production of post-2003 electronic transactional data, in your March 2, 2007 letter, you informed me that Arkema is willing to produce its post-2003 electronic transactional data through the end of the first quarter of 2006, only if PolyOne is willing to produce both its electronic purchase data and its downstream data relating to its sales of products containing Plastics Additives. As you may know, PolyOne has already produced its electronic purchase data through at least the end of September 2004.

Today, in response to your March 2 letter, I informed you that PolyOne would accept Arkema's production of electronic post-2003 electronic transactional data through the end of the first quarter of 2006 in exchange for PolyOne producing its electronic purchase data for the same period. I informed you that PolyOne would not, for the reasons raised in its response to Arkema's motion to compel, produce its downstream data relating to its sales of products manufactured using Plastic Additives.

You informed me that you would need a day or two to confer with Arkema concerning PolyOne's position. Accordingly, we request Arkema's response by the close of business on Monday, March 12.

Second, you informed me that you are still working with Arkema to determine what P&L data Arkema has responsive to PolyOne's request. Given the May 1 discovery deadline for this case, we ask that you provide us with an update on this issue with your response regarding the production of the post-2003 electronic transactional data.

ATTORNEYS AT LAW    CONNECTICUT    SCOTT + SCOTT, LLC    440 247-8200 VOICE

OHIO    33 RIVER STREET    440 247-8276 FAX

CALIFORNIA    CHAGRIN FALLS, OH 44022    SCOTTLAW@SCOTT-SCOTT.COM

WWW.SCOTT-SCOTT.COM

Third, we agreed that going forward questions relating to the transactional data produced by either party would be submitted in writing and conveyed to the appropriate technical people for answers.

Thank you for your time this morning.  I look forward to Arkema's response.

Sincerely,

Walter W. Noss

cc (via e-mail only):
C. Andrew Dirksen
Robert N. Kaplan
Joseph C. Kohn
Linda Nussbaum
Howard D. Scher
Edmund W. Searby

**CERTIFICATE OF SERVICE**
**2:03-cv-02038-LDD (Direct Purchaser Class Action)**

I hereby certify that on September 21, 2009, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

**STEVEN E. BIZAR**
bizarse@bipc.com

**ANTHONY J. BOLOGNESE**
abolognese@bolognese-law.com

**NATHANAEL M. COUSINS**
nat.cousins@usdoj.gov,marc.siegel@usd
oj.gov

**CHARLES ANDREW DIRKSEN**
cdirksen@gbcslaw.com
efilingnotices@gbcslaw.com
cdl@gbcslaw.com

**NATHAN P. EIMER**
neimer@eimerstahl.com
fharvey@eimerstahl.com
abrown@eimerstahl.com

**CARL N. FRANKOVITCH**
carln@facslaw.com

**JOHN G. HARKINS , JR**
jharkins@harkinscunningham.com
mstrohmeyer@harkinscunningham.com

**RYAN S. HEDGES**
rhedges@eimerstahl.com
erogers@eimerstahl.com
fharvey@eimerstahl.com
adreyer@eimerstahl.com

**CRAIG W. HILLWIG**
chillwig@kohnswift.com
info@kohnswift.com
cspagna@kohnswift.com
**WILLIAM E. HOESE**
whoese@kohnswift.com

jburt@kohnswift.com
**LANDON Y. JONES**
landon.jones@bipc.com

**ROBERT N. KAPLAN**
rkaplan@kaplanfox.com

**COLIN R. KASS**
ckass@kirkland.com

**RICHARD J. KILSHEIMER**
rkilsheimer@kaplanfox.com

**JOSEPH C. KOHN**
jkohn@kohnswift.com

**WAYNE A. MACK**
wamack@duanemorris.com

**THOMAS P. MANNING**
manningtp@bipc.com

**THOMAS J. MCGARRIGLE**
tmcgar-
rigle@reedsmith.com,rreber@reedsmith.
com

**ROBERT L. MURKEN**
murken@harkinscunningham.com

**DIANNE M. NAST**
dnast@rodanast.com

**STEIG D. OLSON**
solson@cmht.com

**J. MANLY PARKS**
jmparks@duanemorris.com

**WILLIAM H. ROBERTS**
roberts@blankrome.com

**JAMES J. RODGERS**
jrodgers@dilworthlaw.com

**JILL ROGERS SPIKER**
jill.spiker@bipc.com

**HOWARD D. SCHER**
scherhd@bipc.com,howard.scher@bipc.com

**STEVEN O. SIDENER**
ssidener@gbcslaw.com,cgw@gbcslaw.com

**COLLEEN HEALY SIMPSON**
csimpson@harkinscunningham.com
mstrohmeyer@harkinscunningham.com

**SCOTT C. SOLBERG**
ssolberg@eimerstahl.com
fharvey@eimerstahl.com
abrown@eimerstahl.com

**PATRICK A. TILLOU**
ptillou@cohenmilstein.com,awentworth@cohenmilstein.com,efilings@cohenmilstein.com

**A. PAUL VICTOR**
pvictor@deweyballantine.com

**JASON A. ZWEIG**
jzweig@kaplanfox.com

I further certify that I have mailed, by U.S. Postal Service, the foregoing to the following non-

CM/ECF participants:

**PATRICK M. BRYAN**
**TEFFT W. SMITH**
**REBECCA A. KOCH**
KIRKLAND & ELLIS, LLP
655 - 15TH ST., N.W. 12TH FL.
WASHINGTON, DC 20005

**STANLEY M. CHESLEY**
WAITE, SCHNEIDER, BAYLESS &
CHESLEY CO., L.P.A.
FOURTH & VINE STREETS
CENTRAL TRUST TOWER, SUITE 1513
CINCINNATI, OH 45202

**THOMAS J. LANG**
MORGAN LEWIS & BOCKIUS LLP
1111 PENNSYLVANIA AVE NW
WASHINGTON, DC 20004

**HILARY E. COHEN**
KOHN SWIFT & GRAF, P.C.
ONE SOUTH BROAD STREET
SUITE 2100
PHILADELPHIA, PA 19107-3304

**MARK LEDDY**
CLEARY, GOTTLIEB, STEEN &
HAMILTON, LLP
2000 PENNSYLVANIA AVE, N.W.
SUITE 9000
WASHINGTON, DC 20006-1801

**SCOTT MARTIN**
WEIL, GOTSHAL & MANGES, LLP
767 FIFTH AVENU
NEW YORK, NY 10153-0119

s/Howard D. Scher